Swing, J.
This cause came into this court by appeal, and is an action for specific performance.
Plaintiff says that the defendant, being the owner of certain lots in Wade’s Subdivision, on Index plat “C.,” of Hamilton Co., on January 3, 1885, entered into an agreement with plaintiff, in consideration of the sum of $1,500, whereby defendant agreed to convey to him said premises. That he has performed all the conditions of the agreement incumbent on him, but that defendant has refused to comply with its conditions on his part, wherefore plaintiff asks for a specific performance of-said agreement.
Defendant answered, setting up five defenses. The first defense is a general denial; the second defense is, that if any contract was made, that it was made by one S. W. Hoffman, a real estate broker, as the defendant’s agent, whereas said Hoffman was not the agent of the defendant, and had no authority to bind him. For his third defense defendant charges, that said Hoffman and the plaintiff conspired together to defraud him; that said Hoffman was the agent of the plaintiff, and fraudulently represented to this defendant that said property was worth only $1,500, when it was worth $4,000; and that said contract was an unfair and unjust one, and should not be enforced against him.
For his fourth defense defendant says he. is a married man, and that his wife refuses to join in any conveyance, and that it would be unreasonable to require him to give a warranty deed.
*346 For his fifth defense defendant says his title to said property is defective, and that a certain action is pending to set aside the conveyance under which he held his title.
A reply was filed by plaintiff, denying the allegations of the answer. Upon the trial the plaintiff offered the contract sued on in evidence, which is as follows:
“Articles of agreement made and entered into this third day of January, A. D. 1885, by and between Daniel Bedinger, of Richmond, Boone Co., Ky., by his agent, S. W. Hoffman, of the first part, and John P. Stanley, of the second part. ’Witnesseth :
“ That the party of first part, hereby agrees to sell to the party of the second part, all of lots ,Nos, (1) one, (2) two, (3) three, (25) twenty-five, (26) twenty-six, (31) thirty-one, (42) forty-two, (45) forty-three, (55) fifty-five, (56)”fifty-six, of M. S. Wade’s Subdivision on Plat C, situated in Hamilton Co., 0., and recorded in Plat 3, page 239 of the records of Hamilton County (and being same lots purchased by said Daniel Bedinger of Mary W. Luckett by deed recorded in book 532, page 38, of the Hamilton Co. Records,) for the sum of fifteen hundred $1500 to be paid in cash.
“And the party of the second part hereby agrees to purchase, and pay said party of first part the sum of fifteen hundred dollars ($1500) cash for above described lots, as soon as he has had sufficient time to exam-ine title of said property and said title is satisfactory to him.
“ In witness whereof we have hereunto set our hands and seals.
Daniel Bedinger, by S. W. Hoffman, Agent, [seal.]
J. P. Stanley.” ■ [seal.]
“ Witness:
J. H. Thompson,
J. C. Hoffman.”
He also offered in evidenoe an instrument in writing as showing the authority of said Hoffman to make the contract, which instrument is as follows:
“ Cincinnati, Dec. 31, 1884.
“ S. W. Hoffman, Esq., Broker:
“ I hereby authorize you to sell lots No. 1, 2, 3, 25, 26, 42, 43, 55 and 56 of Wade’s Subdivision, for $1,500. Cash when title is examined and found correct. I will make warranty deed, and numbers are those owned by me; if not the same to be corrected. 10 lots in all.
Daniel Bedinger.”
Also a letter of said defendant, which is as follows:
“Richmond, Ky., January 1st, 1885.
“ S. W. Hoffman Esq., Cincinnati, O.:
“ Dear /Sir: — Enclosed please find deed to lots on hill; hoping you will be able to effect a sale, I am yours, etc.,
Daniel Bedinger.”
*347 It was admitted that the defendant signed the papers purported to have been signed by him.
S. W. Hoffman was called as a witness, who testified at considerable length, the substance of his testimony being to the-effect that in this matter he was acting entirely as the agent-of the defendant. That he had had the property for sale for-some time previous to the transaction, at $1,750, but was unable to find a purchaser; that defendant was anxious to sell,, being much in need of -money; that he told defendant he-thought he would sell it for $1,500, and that defendant then-gave him the authority to sell at that figure which I have' read; that he sold to the plaintiff, who was then and is now a resident of the state of Michigan ; that plaintiff paid thereon the sum of $20, and that he gave him the following receipt :
“ Keceived Cincinnati January 30, 1885, oí Mr. John P. Stanley twenty dollars as part payment for the purchase of Dots No. 1, 2, 3, 25, 26, 31, 42, 43, 55 and 56 of M. S. Wade’s subdivision, Plat C, situate in Hamilton County, O. The balance of payment of $1,500 to be paid in cash as sufficient time has been allowed to examine title, and deed is prepared.
$20.00. Daniel Bedingeb, by S. W. Hoeeman, Agent.”
Shortly after the contract was signed, he says, the defendant-was informed by him of the sale, and that he came.to his office and expressed to him his satisfaction with the sale, and asked for the deed to take to his lawyer, in order to get a deed drawn; that shortly afterwards he met the defendant, who informed him that the property was worth much more money than be' had agreed to take for it, and that he would not comply with the contract. Witness said that he considered the price agreed to be paid a fair value for the property at the time, and that he acted in entire good faith in the transaction as the agent of Mr. Bedinger. It was admitted that the balance of the purchase-money was tendered by the plaintiff’s agent and a deed demanded, and that defendant refused to receive the money and give the deed.
The defendant was called as a witness, and in our judgment-did not contradict the evidence of Mr. Hoffman as to any material matter. He admitted giving the written authority to *348 sell at $1,500, and said he would have taken that amount for it on that day; admitted sending and writing the letter above referred to. At first he denied that he had assented to the contract on the day he got the deed from Hoffman; but on cross-examination admitted that he had testified on the trial in the court of common pleas that he had said to Hoffman that it was all right, and that he would take his deed to his lawyer and have a deed prepared to Stanley.
There was no attempt made to show that Hoffman was acting as the agent of the plaintiff, and that he fraudulently represented to defendant anything as to the value of the land.
The property in dispute is some unimproved lots situated north of the city on what is known as Ross’ Hill. Streets have been located, but not graded, and the lots would have to be graded down to an average of some twenty feet so as to conform to the grade of the contemplated streets. Two witnesses were called, who testified as to the value of the land at the time of the contract to convey. They estimated it as of the value of between $3,000 to $4,000, but that it would require considerable of an outlay of money to grade the lots so as to be used.
On the evidence we are satisfied that Hoffman was acting wholly as the agent of the defendant, and that he did so in good faith and without any fraud on his part; that the plaintiff authorized said Hoffman to sell at the price agreed on, to-wit, $1,500, and that he afterwards, at the office of Hoffman, assented to the same; but that beafter wards changed his mind and refused to carry out the agreement on his part. The evidence further shows that the contract to convey was recorded on January 21st, 1885; that afterwards, on March 7th, 1885, Mr. Goodrich brought an action, numbered 72,527, in the Hamilton County Common Pleas against Mary W. Luckett, the grantor of the defendant, and the defendant, alleging that the conveyance by said Luckett to said defendant, was done for the purpose of defrauding the creditors of the said Luckett, of which the said Goodrich claims to have been one at the time of the fraudulent conveyance to said defendant.
It was further shown by the evidence, that the defendant is a resident of the state of Kentucky, and has a wife living, and *349 that she says she will not sign a deed to plaintiff under this contract; and it further appears that the plaintiff had no knowledge of this fact at the time of the making of the agreement.
this state of facts, what are the rights of the parties?
First, we think that the defendant’s fifth defense that he has not a good title to the land, and that an action is pending to set aside his deed to the premises, is not available to him. Plaintiff does not object to his title and is perfectly willing to take it, and if defendant has contracted to convey, it is no defense for him that his title is not perfect. But there is nothing in the evidence to show that the deed of the defendant to the plaintiff, would not carry a good title, free from any claim set up in the suit of Goodrich v. Luchett. The suit was brought long after the agreement of Bedinger to sell to plaintiff was entered into and recorded — the plaintiff had no actual or constructive notice of the fraud alleged — he was an innocent purchaser for value, and will take the title free from any claim of Goodrich such as is set up in his petition.
In the second place, we are satisfied that if the defendant is liable on this contract to convey this propérty, that he must convey the entire property free irom all claims by a good and sufficient deed, which would be a deed of general warranty. The agreement itself is silent as to the kind of deed. It says that the party of the first part hereby agrees to sell certain lands, which the party of the second part agrees to purchase. What would we understand, from the use of such language as this, was the intention of the parties? Judge Tilden, in a very clear and able opinion in the case of Moore v. Moulton, 2 Weekly Law Bulletin, 323, in construing similar language in a contract, says at page 325 :
“ A comprehensive undertaking to sell a definite portion of real estate includes, by necessary implication, a promise on payment of the price, to convey such real estate in such manner as will embrace all of it, and every interest in it and every incident to it, and to that end to execute in due form an instrument which shall convey and assume and maintain the ownership of the purchaser. Here the words, literally construed, include all this. The promise was made upon a *350 valuable and upon what the parties regarded as an adequate consideration, and the inference is fairly deducible from the nature and circumstances of the transaction, that both parties contemplated the sale of the entire estate as it was constituted at the date of the contract, and the conveyance of such'an estate by an instrument containing all the covenants of title usual in such cases.” And this we deem to be the law. But if this might be questioned, we have in addition here the written authority of the defendant to Hoffman, to sell this property by a warranty deed, and this as forming part of the transaction may very properly be considered as showing the-intent of the parties.
We next come to the consideration of the defense that defendant is a married man, and that his wife refuses to sign the deed. The same defense was set up in the case I have just read from, and on that question Judge Tilden says :
“I am further of opinion that, upon the construction just given to the contract, the plaintiff is entitled to be relieved against any claim hereafter to mature in behalf of the defendant’s wife. The circumstance that the plaintiff, when he entered into the contract, was aware that the defendant had a. wife can, in my judgment, exercise no proper influence in the construction of it. * * The very fact that the plaintiff knew that the defendant had a wife, may have been the-reason why he required, and the defendant consented, to enter into a covenant against her contingent claim.” ■
In the 41st Ohio St., 47, 636, in Lucas v. Scott, our supreme court held, that where the purchaser knew that the owner’s wife would not join her husband in the execution of the deed,, and. the circumstances of the transaction showed that the owner would not have refused to agree to convey with release of dower by the wife, and this fact was known to the purchaser, that it was error to decree specific performance, with an abatement for the value of the prospective dower of the-wife. But in this case the purchaser did not know that the-owner had a wife.
These cases clearly show that the plaintiff is entitled to-specific performance of his contract, and that he must have protection against the contingent right of dower of the defend *351 ant’s wife. How shall it be done ? This question is also very clearly and ably discussed by Judge Tilden in the case I have referred to. As to how this may be done, it seems the cases are not agreed. Pomeroy on Specific Performance says : “The rule is to ascertain by the tabfys the value of wife’s right of dower, and deduct that form the purchase money;” and the supreme court of Massachusetts, in the case of Davis v. Parker, 14 Allen, 98, seems to have taken for granted that thé law was settled in favor of this form of relief. But Judge Tilden seems to think that this is not the proper mode. That according to the rules of equity, compensation is for present loss, and indemnity is against future risk, and, therefore, that the court should require indemnity, instead of allowing compensation, and this in our judgment is the manner in which the purchaser should be protected, and that • probably it should be carried into effect by requiring the purchaser to execute a mortgage to the defendant for whatever amount we shall deem right, for his protection against the dower of the defendant’s wife; but we would suggest to counsel that this matter should be adjusted between them, unless it is desired to take the case to the supreme court.
M. F. Wilson, for plaintiff:
A. M. Warner, for defendant.
Decree for plaintiff for specific performance.